We will be proceeding now in our third case, Bennett v. Garner. Mr. O'Donnell, please. If it pleases the Court, my name is Kevin O'Donnell. I'm here on behalf of the appellant, John Bennett. It has been a while since I've been down here. I want to say it's an honor and a privilege to appear before this Court. I thank you for the opportunity this morning. As this Court knows, in the action below, my client filed a motion for partial summary judgment under two counts of fraudulent conveyance under Sections 55-80 and 81 of the Virginia Code. I'm going to focus most of my argument on those counts and the outcome of those counts below because I believe that they are potentially dispositive of the case, and I also believe that they have significant import and potential impact on the practice of civil litigation in the federal and state courts in the Commonwealth. As this Court knows, prior to the filing of the action below, my client had obtained a state court judgment affirming an arbitration award on a simple breach of contract claim against the appellees, Mr. Garner and Vertus Consulting. Mr. Garner paid his portion of the judgment. Vertus Consulting did not. And after being unsuccessful in collecting assets from Vertus, my client filed the action in the district court below, filing, in addition to other counts, the 55-80 and 81 counts, seeking to recover property fraudulently transferred by Vertus Consulting so that we could recover that for the purpose of payment and satisfaction of our judgment. The district court below, as the Court knows, rejected and denied our motion for summary judgment and instead granted summary judgment on behalf of the defendants under a theory of res judicata. Essentially, what the district court said was you needed to bring those actions for fraudulent conveyance at the same time as you litigated the theory of liability, and because you did not, they are forever lost. Well, as I understand those two statutes you're talking about, they're remedy statutes. Absolutely, Your Honor. It is not to establish a separate cause of action. And I think therein lies the — that's the entirety of our argument. I mean, I rode down from Alexandria this morning, and I keep rehearsing. It's what we do. We ride along and we talk to ourselves as we drive. And I'm rehearsing my argument, and I kept saying to myself, this is such a simple case. But yet here I stand. Well, if it is such a simple case, tell us how the court went off the rails then. You know, honestly, Your Honor, I don't understand that because Judge Hilton did not provide a lot of analysis of what I felt was the critical issue. In other words, the issue of whether or not the actions under 5580 and 81 had been brought to establish separate liability. The question at the end of the day for the purposes of deciding this case is the question of whether or not my actions and the fraudulent conveyance counts below were filed to establish separate liability of the defendants under some related theory or cause of action, or whether they were simply actions brought to recover upon the existing debt and judgment. In other words, an action, as the Virginia Supreme Court says, to be able to recover or properly fraudulently conveyed. So your case then can be reduced to one sentence. This is not an action to establish separate liability, but merely to execute on a judgment. Absolutely. And I think that that is the ruling of the case law in Virginia, and it is abundantly clear. We provided, Your Honor, quotations to the cases of Mills v. Miller and Harness, Cheadle v. Rudd's swimming pool, where the Virginia Supreme Court said emphatically, Section 5580 of the Virginia Code does not authorize an impersonum judgment when a fraudulent conveyance is set aside. That is the general rule in the Commonwealth of Virginia. But let me say, I think there is a basis for and a circumstance which causes some confusion as to that general rule. And that is the exception that the Virginia Supreme Court carved out from that general in 1994 under the case of Price v. Hawkins. As the Court may recall, in the Price v. Hawkins case, the Virginia Supreme Court was faced with a fraudulent transfer of property, and the property that was alleged to have been fraudulently conveyed was money, was cash. In that case alone, the Virginia Supreme Court said, we're going to craft a small exception to this rule of no impersonum liability, and we're going to permit an impersonation so that the defendants cannot avoid the remedy provided for under the statute by saying, I don't have the money anymore. It applies only in a circumstance where the property that was transferred was money or cash. And I would tell you — Well, under the Price rule, it has to be cash. It has to be cash. That's correct. Okay. And what the appellees do, Your Honor, is they seize upon this argument that there now is a basis for personal liability to be assessed, and they say, that means that res judicata has to apply. You're asking for personal liability. If you're asking for that, the doctrine has to be applicable and the claims have to be barred. And I would submit to you that if the Supreme Court in Virginia had never spoken after Price v. Hawkins, that argument might be a little more colorable. I don't submit that it would be correct, but I think it might be more colorable. But the problem is, the Virginia Supreme Court spoke succinctly and authoritatively on the effect of that limited exception in the LaBelladonna skin care case. And if I could commend this Court to review any one single precedent or authority to be able to understand our position in this case and why I believe that the district court erred, it would be the LaBelladonna case. Because in that particular case, the Virginia Supreme Court embarked upon a review of the historical impact of 5580 of the Virginia Code and the effect and purpose of the statute. And what the Virginia Supreme Court did first was to restate the general rule. It said, Code section 5580 does not impose liability upon participants of a fraudulent conveyance. The statute merely renders void every conveyance made with intent to delay, hinder, or defraud. What it did after that was it visited the Price v. Hawkins exception. And it first talked about why that exception was necessary, but then talked about the effect of it as to the purpose of the statute. And that's what's critical in the case. For the purposes of why it was enacted, the Virginia Supreme Court said that the Therefore, simply declaring a transaction void would have been meaningless in terms of relief to the defrauded creditor. But it went on because it talked about how that exception affects the general rule that no liability is imputed against the transferee. The Virginia Supreme Court said that the limited remedy placed the grantee in the position of one holding for the account of the debtor. In effect, the remedy unwound the transfer of cash in the grantee's pocket. It did not impose liability upon the grantee by virtue of his participation in the transaction. So the Virginia Supreme Court is creating a slight legal fiction. What it's saying is, yes, we crafted an exception to the rule, but that exception is there only to impose liability or to unwind the transfer of cash in the grantee's pockets and to hold the grantee in the position of holding one for the account of the debtor. It does not, as the Virginia Supreme Court observed, impose liability by virtue of the participation in the transaction. I would point to one last piece of language out of the Virginia Supreme Court holding in La Belladonna, and I would note that in the appellee's argument, they say this was a case in which the Virginia Supreme Court was addressing whether a claim of civil conspiracy to violate a fraudulent conveyance or to affect a fraudulent conveyance existed under Virginia law, so you shouldn't pay any attention to it because it doesn't have anything to do with race judicata. And it's correct. But the reason that Virginia found ultimately that there was no claim for civil conspiracy to affect a fraudulent conveyance is because the Virginia Supreme Court found that actions under 5580 are not separate unlawful predicate acts upon which a claim of civil conspiracy can be made. As this Court knows, to have a claim for civil conspiracy, you have to have some unlawful predicate act that's wrong that can be spread amongst the co-conspirators. The Virginia Supreme Court ---- Thank you, Mr. O'Donnell, but are you unduly complicating the case at this point? Well, I don't mean to, Your Honor. I don't mean to. I think the Virginia Supreme Court's language on this issue is very clear. I just want to read the last holding of the Virginia Supreme Court as to the impact of the Price v. Hawkins issue. It says, because avoidance of a transaction is the only remedy available under Code 5580, a claim for fraudulent conveyance is not a predicate unlawful act from which liability can be spread to others on a theory of civil conspiracy. What I think that means is that there's no independent cause of action under 5580 to assert liability against a third party. I'm not asking for another judgment against either of the defendants to support another theory of liability. I don't need that. I got my judgment. I got it in the arbitration. I wasn't counsel in that case, but my client obtained it in the arbitration. It was affirmed by a state court judgment, and Mr. Garner paid his portion of the judgment. What my client wants to do now, and what he attempted to do below in the 5580 and 81 counts, is to pursue collection of that judgment. And that is not a separate action that is barred under the doctrine of res judicata. That is not a second bite at the apple, which is what the doctrine prevents. If this Court agrees with us and reverses as to the district court's decision that the doctrine of res judicata cannot bar the actions under 5580 and 81, we would also ask that this Court remand with instructions to enter summary judgment in favor of the plaintiff and the appellant as to both the 5580 and 55-81 claims. And the easiest of those, as we've submitted in our briefs to the Court, is the liability under Section 5580, which is the actual fraud statute in Virginia. It's a transfer made with intent to delay, hinder, or defraud. And the reason for that is that Virginia has a per se rule of liability that is very clearly established and which is very clearly present in this case. Under Virginia law, under 5580 of the Virginia Code, the Virginia Supreme Court has said when an insolvent corporation prefers a creditor who is in complete control of the corporation's affairs over other creditors of the corporation, the preference is fraudulent per se. That was the Mills v. Miller Harness Company and also the Darden v. George V. Lee Company cases that were cited in our briefs. You only need two things. You need to establish that Mr. Garner was in complete control of Virtus, which is not disputed. He was the 100% member and equity owner. He was the only officer and director. He was the sole party responsible for financial affairs of the company. He was the sole party responsible for negotiating the sale of Virtus assets. And then you need to know that he preferred other creditors. My client was a creditor of Virtus Consulting. Mr. Garner transferred the entirety of the assets of his company to himself in what can only be called a textbook example of a fraudulent transfer. He sold the assets of Virtus Consulting to Solomon Edwards Group for a sum of over $3 million and the entirety of that cash value was not paid to the corporation. It was paid to Mr. Garner under the auspices of an employment agreement. Kagan. Mr. O'Donnell, let me interrupt you if I can because I see your light coming on. O'Donnell. Yes, ma'am. Kagan. You're asking for a remand with instructions to enter summary judgment, but Judge Hilton didn't address the merits of the case, did he? He simply said that there was a raised judicata bar here. O'Donnell. I suppose that's it. He said raised judicata was a bar to the continuation of the litigation. Kagan. Exactly. O'Donnell. So he did not reach the merits of our argument. Kagan. So we can't direct summary judgment, can we? O'Donnell. I suppose the correct remedy then is to remand with instructions to then entertain the substance of our summary judgment motion, Your Honor. Kagan. Okay. O'Donnell. With that, then, I will rest here. Kagan. Thank you. Mr. Biggs. Wayne Biggs. May it please the Court, my name is Wayne Biggs and I'm here to represent Mr. Garner. And if I may, before I launch into the meat of my argument, if I may address part of counsel's argument, if his argument can be reduced to one sentence that these aren't actions to establish liability, but actions to collect on their judgment, then I would also direct the Court to one sentence, and it's the first sentence of Rule 16A, which governs raised judicata and claim preclusion. And raised judicata under this Rule 1.6 applies to bar any civil action against the same opposing parties on any claim or cause of action that arises from the same conduct, transaction, or occurrence, whether or not the legal theory or rights asserted in the second or subsequent action were raised in the prior lawsuit, and regardless of the legal elements or the evidence upon which any claims in the prior case proceedings depended, or the particular remedies sought. Or the particular remedies sought. Right. But isn't the problem with your case the fact that you are saying effectively the party has to seek enforcement as of a judgment before they get a judgment? It seems to me that what you're missing here is that an element of a cause of action for execution on a judgment is the fact that a judgment has been obtained. And there is no way that they could have sought that in arbitration. They didn't even have the judgment in the first place. They didn't need the judgment to seek that in arbitration. Under 55-82, they could have brought any claim that they could, that they might have brought after having a judgment under 80 and 81 just on the basis of being a creditor. That's the point of 55-82, is that all you need to do is be a creditor. You don't need to be a judgment creditor. You just need to be a creditor. So what would the claim have said? The claim would have said exactly what they said here. There's no bar to it being brought in arbitration. They would have said exactly what they say here, that there's been a transfer. We're a creditor. There's been an involuntary transfer. And under Price v. Hawkins, enter judgment in our favor. And the issue and the analysis should focus on whether this is the same transaction or occurrence, not upon the remedy being sought. Wouldn't they have had to have known that your client wasn't going to pay the judgment that they had not yet received in arbitration? I don't know that knowledge of what he was going to do if he lost the case is relevant, but this court in the Hartnett case that I cite in my brief said knowledge of whether or not you even have a right to sue is not relevant to the raised judicata bar. But how did the conveyance become fraudulent until there was an attempt to evade the judgment? Whether or not the conveyance was fraudulent would be dependent upon the intent of the person who's done the conveying. Right, but the guts of their case is we had a judgment, and then they're trying to evade the judgment. Understood, but that doesn't matter as far as, that doesn't matter to the raised judicata analysis. It seems like you're asking them to be clairvoyant that first of all, we're going to get a judgment, and then second of all, your client is going to try to fraudulently evade that judgment before any of it ever happened. They're just supposed to know that your client was a bad actor, and so they better. I think that what they needed to have done, and in this case, one of the facts that Judge Hilton found was that as of late October 2013, they were on notice of the facts and circumstances of the SEG transaction. And that meant that they specifically had the employment agreement in their hand. The $3 million, the biggest part of their transfer and their fraudulent conveyance action was staring them in the face during arbitration. Here is $3 million being paid directly to Mr. Garner, and here is stock going to Virtus, not cash going to Virtus, but stock going to Virtus. At that point, the cause of action has accrued. Well, there was no attempt to evade a judgment at that point because there was no judgment. I don't think there needs to be an attempt to evade a judgment. Well, what was the purpose of the fraud claim then? I mean, what would be the gravamen of the fraud claim? Just the fact they were moving the money? Just the fact that you're moving the money, yes. The statute says a transfer with the intent to him. But that's not their claim here. Their claim is a remedy, not a... Their claim is a remedy to get the judgment owed to them. But that wasn't... And actually, to that point, that's not exactly what they said to begin with in this suit. To begin with... Then why did you start your argument with quoting that language about or remedies otherwise? Because I believe that there's no authority for the proposition that 55-80 and 55-81 aren't subject to race judicata analysis, which that would be the, I think, the logical conclusion here is that they can never be part of race judicata analysis. You don't have to have a judgment to file them. So therefore, they are part of race judicata analysis. They're not a specific exception under 1-6, and they're not a judicially recognized exception. What they said in their brief, first of all, they didn't name Virtus, the judgment debtor, as a defendant in this case until later. And their adjourner motion doesn't say anything about this case being an action to collect their judgment. This says that they needed to add him because there's a mix of case laws as to whether or not the transferor is a necessary party. But what they say in the end of paragraph 6 is there's a long recitation of the facts of their point of view of this case, and they say, Bennett has been damaged and is now seeking to recover from Garner directly. As Virtus was merely an alter ego, Garner fraudulently induced Bennett to enter into the contract and the fraudulent conveyance statute. They filed this action seeking to impose liability upon Mr. Garner directly. Now, they haven't appealed fraudulent inducement, and I think they didn't appeal that because it sort of cuts against their argument. What do you mean by appeal? They chose not to appeal the dismissal of the fraudulent inducement claim. They've left that as standing as dismissed. That claim is unquestionably a claim of direct liability. That claim is not a claim in execution of a judgment. The fact that they brought that claim along with 55-80, 55-81 and the alter ego claim under the Supreme Court's case in Funny Guy demonstrates that all those claims could have been brought together. Well, Funny Guy was a different case. They were talking about a quantum merit action brought with the breach of contract  That's just different from this. We're talking about enforcement of a judgment, not alternate theories of recovery saying you have a contract but we don't have a contract. Understood, Judge. I think that the point of Funny Guy, however, and I would urge you, if I may, that it does apply to this case, is that if the claims that are at issue could have been brought under 801-281 and 801-272 under the analysis of the same transaction and occurrence, then they should have been brought in the first action. And if they weren't brought in the first action, they can't be brought now. To give you an analogy, if we were back at the beginning of this case, I don't think there could be any question in anyone's mind that under 801-272 or 801 that you could have had a claim for breach of contract, including the veil piercing. But, see, I think you're trying to read way too much into Funny Guy. I mean, Funny Guy is basically what you're – Funny Guy is talking about a narrow factual situation. In fact, the court takes out, takes special pains to say we are addressing only the case before us. All statements of law are to be read in connection with the facts of the case to which they are to be applied. And that's what I'm worried that you're doing here, is taking general principles that apply to cases and ignoring the posture of this case, which is the remedy, the remedial aspect of this case, which was not to seek additional liability, but to enforce the judgment. Yet in each one of their counts, they're seeking compensatory damages against Mr. Garner, which is allowed under Price v. Hawkins. And Funny Guy – But, you know, Price v. Hawkins, now you're treading on a little bit of dangerous territory because I was there. Yes, ma'am. And Price v. Hawkins is very limited in terms of you can go after the cash in someone's pocket. And the end result – And he wrote very narrowly to say that you cannot get out of a – you can't hide from your own inequitable conduct by transferring things into cash and putting them in your pocket so that there's no way to trace the money anymore. That's all the court said at that time. But the end result is still the end persona money judgment, which is what they're seeking here. And if I may, just to make my argument for it, Funny Guy ends with a summary that says, Rule 6 was meant to echo and implement the joinder principles of 801-272 and 801-281 and their companion Rule 1-4K. If alternative claims qualify for joinder under the same transaction or current standard in these joinder statutes in this rule, they likewise constitute res judicata unless disqualifying principles of res judicata applies. They've not argued any disqualifying principles. They've not argued any judicial exceptions. And I would submit to you that notwithstanding the language that we're limiting – Mr. Biggs, I'm going to cut you off for just one second. I really think you're riding the Funny Guy horse, and you really can't do it. I mean, Funny Guy is saying here, just as Kelsey is saying at page 163, two actions do not arise out of the same occurrence. Funny Guy's cause of action for breach of the oral contract accrued immediately upon the defendant's alleged breach of that agreement. Okay? Here, we didn't have a cause of action seeking execution on a judgment based on a fraudulent transfer of assets. Yes. So how can it have arisen out of the same occurrence? It arose out of the same transaction or occurrence because the transfer that they're complaining of as to the employment agreement is directly related to the SED transaction. Mr. Bennett's contract was inextricably tied to the SED transaction. The Bennett agreement, the point of the Bennett agreement, was by its own terms to share in the proceeds of the SED transaction. Mr. Bennett's payment, he got an upfront payment. His earn out payments were dependent upon SED's payments and the earn out performance under the SED transaction. Mr. Bennett was owed nothing unless SED paid Mr. Garner. It was completely contingent upon SED's performance. So it is the same transaction or occurrence. Their entire case, their complaint continually makes reference mainly at the complaint level to the employment agreement and the transfer that occurred there. It is absolutely part of the same conduct, transaction, or occurrence that they're complaining of now. It didn't matter that they didn't have a judgment then because under 55-82 you didn't need one. And by the same token, the transfer of the $200,000 followed by the $38,000 were also tied inextricably to the SED transaction because the $200,000 was cleared out of the first bank account because SED was taking over that account and the $38,000 was paid to Mr. Garner as part of his first payment from SED. Those transfers are absolutely part of that transaction. And I understand that we don't see eye-to-eye on Funny Guy, but reading what it says, it's telling me if it's part of the same transaction or occurrence, then it is subject to res judicata. The question is, as I see it, is whether 55-80 and 55-81 are causes of action. I think they are causes of action that can be brought. And if they are, then there is no authority that they have cited, because I don't believe there is any, that says these particular transactions are not subject to res judicata. Do you have any Virginia cases that involve the fraudulent conveyance statutes that do not involve actions to enforce the judgment? Not that I can think of as I'm standing here, but I would again point the Court to the existence of 55-82. The fact that 55-82 exists means that you don't need a judgment to file this claim. 55-82, what it means is that Mr. Bennett could have done exactly what the Court below found that he should have done. If his cause of action had accrued, then he should have filed his cause of action at that time. And as I've said, this Court in Harnett v. Billman said that whether or not you had knowledge of that is irrelevant. That's not the analysis. The question is whether or not it has accrued. So if it has accrued, then at that point, it does become subject to res judicata analysis. Again, I would submit to you that if 55-80 and 55-81 are causes of action that could have been brought during the arbitration based upon the transfers that have occurred, then they should have been brought. And not having been brought, then they're now barred by res judicata. It is irrelevant and immaterial whether or not there was a judgment that came later that is now claiming to be evaded under 55-82. They didn't have to have a judgment. And I would submit to you that you should affirm the ruling of the District Court in this regard. And also, I was prepared to discuss their request to enter, to direct summary judgment be entered, but since it seems that they've agreed that if you are reversing, then it simply has to be sent back to Judge Hilton to proceed from there, then I would agree with that. Okay. Thank you very much. Thank you. Mr. O'Donnell, do you have rebuttal? Your Honor, let me just first say, and I heard you asking about whether he had any cases that did not involve pursuit of 55-80 or 81 claims on a --" against a judgment. I can tell you there are no cases in Virginia in which the doctrine of res judicata has been applied to prevent recovery of claims under 55-80 and 81 in pursuit of a prior judgment that was rendered. And I have to tell you, I've looked outside of Virginia, and it's possible I've missed something because we have the amorphous entirety of the United States, but I'm telling you I can't find a comparable case anywhere else on that fact pattern either. It is, from a policy perspective, a terrible decision. It is an extension of res judicata to a principle and aspect of standard collection practice that I have never seen before. And what it potentially does is it puts litigants and the courts in the position of potentially having to adjudicate issues pertaining to execution before the issues of liability have been determined. Well, how could they do that? Well, you would do it contemporaneously. In other words, when I brought my breach of contract action, what Mr. Biggs suggests to you is that I should have filed a breach of contract, and then I should have at some point in time when I saw some fraudulent conveyance action. Now, if I lost my breach of contract claim, I don't have a right to do anything on the fraudulent conveyance action, but what he's suggesting is that we take judicial resources and litigate both of those issues, litigate the fraudulent conveyance matter as if I'm going to win. Let's expend the judicial resources and the legal resources necessary to do that. Right. But what I'm struggling with is how you even have a cause of action for saying in the event that I win. Well, again, I think a judgment or an established liability is necessary to be able to prosecute an action under 5580 or 81. I do agree with Mr. Biggs. I don't think you have to have a judgment. I think you can prosecute it in the context of the same litigation, but I do not believe that it is a separate cause of action. It is not, as I've said, I'm not asking for another judgment against them to collect the judgment that I have. I think from a policy standpoint, it's disastrous. Let me come back and revisit, and I apologize to Mr. Biggs because I almost said something as he was winding up. If it's wrong or incorrect, I'm happy to give him another minute. I was thinking as I sat down about the colloquy we had about the appellate posture and what the potential remedies are with respect to this case, and you suggested that because Judge Hilton did not rule on the merits of my motions for summary judgment, that you could only reverse with instructions to entertain. I'm not sure contemplating that, and I hope that I'm not missing anything, that that is entirely correct. And here's my argument. Judge Hilton denied my motions for summary judgment, period. They were denied. Under appellate procedure and the case law of this circuit, a motion for summary judgment that's been denied is reviewed de novo by this Court. So the issues of my summary judgment motions under 5580 and 81 are now properly before this Court. And you have the ---- But a determination of res judicata is not a determination on the merits of the case. I mean, we learned that ---- Okay. ---- in first-year law school. So how do you have a right to summary judgment on remand? Well, again, I, I, I, he, he made two separate rulings. He denied my motion for summary judgment. He granted defendant's motion for summary judgment. Because mine has been denied, that is the procedural posture of this case. And I think upon denial of my motion for summary judgment, you have a de novo review of this case, and if you determine ---- But review what? I'm sorry. Review what? If the district court didn't address the merits, there's nothing for us to look at to review. Okay. I, I would just submit that you would review the, the, you would review our motion for summary judgment. You would rule upon it as if you were the trial court. I, I submit that that's, I, I, I, again, I apologize. I don't mean to confuse that issue, but I think it is one potential remedy. I thank the Court for its time today. All right. Thank you very much. We will come down and greet counsel and then proceed to our next case. Thank you. Thank you.
judges: Barbara Milano Keenan, Henry F. Floyd, Stephanie D. Thacker